J-A27008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARK HANKIN & INDUSTRIAL REAL ESTATE MANAGEMENT D/B/A HANMAR ASSOCIATES, MLP | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| KEYSTONE GRANITE & TILE, INC. | : : | No. 2209 EDA 2020 |
| Appellant | : | |

Appeal from the Order Entered October 23, 2020
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 200701385

| | | |
|---|---|---|
| MARK HANKIN & INDUSTRIAL REAL ESTATE MANAGEMENT D/B/A HANMAR ASSOCIATES, MLP | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| KEYSTONE GRANITE & TILE, INC. | : : | No. 2212 EDA 2020 |
| Appellant | : | |

Appeal from the Order Entered October 23, 2020
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 200701385

| | | |
|---|---|---|
| MARK HANKIN & INDUSTRIAL REAL ESTATE MANAGEMENT D/B/A HANMAR ASSOCIATES, MLP | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : | No. 2220 EDA 2020 |
| KEYSTONE GRANITE & TILE, INC. | : | |

J-A27008-21

Appeal from the Order Entered October 23, 2020
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 200701385

MARK HANKIN & INDUSTRIAL REAL : IN THE SUPERIOR COURT OF
ESTATE MANAGEMENT D/B/A : PENNSYLVANIA
HANMAR ASSOCIATES, MLP :
:
Appellants :
:
:
:
v. :
:
: No. 2293 EDA 2020
:
KEYSTONE GRANITE & TILE, INC. :

Appeal from the Order Entered October 23, 2020
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 200701385

BEFORE:  PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED FEBRUARY 18, 2022**

Mark Hankin & Industrial Real Estate Management d/b/a/ HanMar Associates, MLP ("HanMar"), and Keystone Granite & Tile, Inc. ("Keystone"), cross-appeal from the orders confirming the five arbitration awards entered in favor of HanMar, confirming the arbitration award of costs and fees in favor of HanMar, denying the remainder of HanMar's petition to partially confirm and partially vacate and modify the arbitration award, and denying Keystone's petition to partially confirm and partially vacate and modify the arbitration award. The practical effect of the trial court's two orders was to confirm the awards in favor of HanMar, while vacating the awards in favor of Keystone but refusing to otherwise modify the arbitration award. We affirm.

- 2 -

Keystone leased warehouse space from HanMar pursuant to a 5-year lease dated November 19, 2012, that expired on February 28, 2018. The lease required Keystone to give HanMar at least one year's notice of Keystone's intent not to renew the lease. On October 27, 2016, Keystone provided HanMar with written notice of its intention not to renew the lease.[1]

_____

[1] The relevant portion of the lease provides as follows:

25. Extensions – Renewals – CPI Escalator.

> A. Extensions. Lessee may terminate this Lease at the end of this term and any Renewal Term or Extension Term, by giving to Lessor written notice at least one (1) year prior thereto …; but in default of a timely Expiration Notice …, this Lease shall continue for an Extension Term equal to the original term hereof ("Extension Term") commencing the day after the expiration of the current term …. In the event that Lessee … shall have given a valid and timely Expiration Notice, and Lessee shall fail or refuse to completely vacate the Premises and restore the same to the condition required in this Lease on or before the end of the term hereof ("Expiration Date"), then it is expressly agreed that Lessor shall have the option either:
>
> > (i) to disregard the Expiration Notice as having no force and effect, whereupon the Expiration Notice shall be null and void, *ab initio*, as if never given; or
> >
> > (ii) treat Lessee as Holding Over, in accordance with paragraph 2(C) hereof.

**See** Keystone's Response in Opposition, 8/14/20, Exhibit A (Lease Agreement), at ¶ 25(A); **see also id.**, at § 2(C) (providing that if Lessee remains in possession of the Premises or fails to restore the Premises as dictated by the lease, holding over creates a month-to-month tenancy, for which the monthly installment of Minimum Annual Rent triple that required under the Minimum Annual Rent payment effective on the last day of the preceding term).

Pursuant to this notice, the lease required Keystone to restore the leased premises to a specified condition, to complete an Environmental Study of the premises, and to fully vacate the premises prior to February 28, 2018. If Keystone failed any of these requirements, the lease agreement provided HanMar with an option to consider the lease automatically renewed despite Keystone's prior notice.

On March 1, 2018, HanMar concluded that Keystone had failed to timely vacate the premises and failed to restore the premises to the specified condition. HanMar subsequently billed Keystone for rent pursuant to the lease agreement. Keystone filed a declaratory judgment action in the Court of Common Pleas of Montgomery County, seeking a determination that the lease had not been renewed. HanMar filed preliminary objections, and the Montgomery County action was stayed to permit the parties to arbitrate their dispute pursuant to the terms of the lease agreement.

HanMar submitted seven individual disputes to be arbitrated. Under the lease agreement, the parties were required to submit proposed awards for each dispute, and the arbitrator was limited to choosing between the two proposed awards in resolving each issue. In other words, the arbitrator had only two options for resolving each dispute—HanMar's proposal or Keystone's proposal. The lease agreement also specifically provided that the arbitrator did not have the power to award punitive damages.

The arbitrator entered an award that found in favor of HanMar for all of the disputes except Dispute #3 and Dispute #5. In Disputes #3 and #5, HanMar's proposed awards stated that HanMar had properly exercised its option to treat the lease as automatically renewed.

In contrast, Keystone's proposed awards provided that the lease agreement was unconscionable. While HanMar argued to the arbitrator that Keystone's responses were untimely under the lease agreement, the arbitrator rejected HanMar's arguments and accepted Keystone's responses.

In the decision, the arbitrator stated there was no dispute that Keystone did not deliver an Environmental Study to HanMar, as required by paragraph 27(B) of the Lease. **See** Keystone's Response in Opposition, 8/14/20, Exhibit B (Arbitration Award), at 2. However, the arbitrator found certain provisions of the lease agreement unconscionable and held that Keystone had substantially complied with the terms of the lease. **See id.**, at 4-9.

As a result, the arbitrator entered each of HanMar's Proposed Awards, except Proposed Awards #3 and #5, based upon the conclusions that those Proposed Awards constituted a penalty. **See id.**, at 13. The arbitrator also entered two of Keystone's Proposed Awards: (i) declaring that the initial lease term terminated on February 28, 2018, and (ii) declaring that Keystone's October 27, 2016 written expiration notice was valid and enforceable. **See id.**,

at 16-17. Finally, the arbitrator awarded HanMar costs and fees totaling $119,067.00.[2] *See id.*, at 20.

On July 22, 2020, HanMar filed in the Montgomery Court of Common Pleas a petition to partially confirm and partially vacate and modify the arbitration award and to confirm the award of attorneys' fees, expenses and costs and reimbursement of arbitration costs.[3] HanMar argued that in failing

_____

[2] HanMar submitted an attorneys' fees certification claiming that HanMar incurred a total of $135,495.46 for legal feels, costs, arbitration expenses and court reporter fees. *See* HanMar's Motion to Partially Confirm and Partially Vacate and Modify Arbitration Award, 7/22/20, Exhibit B (Arbitration Award), at 19-20. The arbitrator also reviewed evidence that HanMar estimated the costs to repair the leased premises was approximately $114,000.00, and the environmental study would cost an estimated $1,500.00. *See id.*, at 20. The arbitrator concluded that the total claimed fees were not reasonable and proportionate, and limited the reimbursement of fees and expenses to $100,000.00. *See id.* The arbitrator further detailed the fees associated with the arbitration proceedings and the American Arbitration Association's administrative fees and directed Keystone to reimburse HanMar in the amount of $19,067.15. *See id.*

[3] Regarding the timeliness of HanMar's petition, we note that a party must challenge an arbitration award within 30 days of the date on which the award was entered. *See* 42 Pa.C.S.A. § 7342(b) (providing that a court shall confirm an arbitration award after 30 days); *see also U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874, 877 (Pa. Super. 2006) (stating that a party's failure to file a petition to vacate or modify an arbitration award within 30 days will result in waiver of claims). Instantly, 30 days following the entry of the arbitration award was March 26, 2020. However, as part of the statewide judicial emergency declared as a result of the COVID-19 pandemic, the Pennsylvania Supreme Court directed that any pleadings that "are required to be filed between March 19, 2020, and May 8, 2020, generally SHALL BE DEEMED to have been timely if they are filed by close of business on May 11, 2020." *See In re General Statewide Judicial Emergency*, 230 A.3d 1015 (Pa. filed April 28, 2020) (*per curiam*). The parties originally filed their petitions in the Court of Common Pleas of Montgomery County prior to May
*(Footnote Continued Next Page)*

to enter its Proposed Awards #3 and #5, the arbitrator exceeded the scope of its jurisdiction as set forth in the arbitration agreement. HanMar therefore asked the court to vacate any "award" entered as to Proposed Awards #3 and #5, and to confirm the arbitrator's decision in all other respects.

On July 24, 2020, the trial court entered an order granting HanMar's petition in its entirety. Specifically, regarding Disputes #3 and #5, the trial court vacated the arbitrator's determination, and entered HanMar's Proposed Awards #3 and #5.

On July 28, 2020, in response to HanMar's petition, Keystone filed its own petition to partially confirm and partially vacate and modify the arbitration awards and to set aside the award of costs and fees. Keystone argued that HanMar was not entitled to attorneys' fees because paragraph 38(A)(viii) is unconscionable. **See** Keystone's Petition to Partially Confirm and Partially Vacate and Modify the Arbitration Awards, 7/28/20, at 13-25. Keystone also argued that HanMar's attorneys' fees certification was excessive and disproportionate. **See id.**, at 25-30. Additionally, Keystone asked the court to vacate the awards entered in favor of HanMar, to confirm the awards entered in favor of Keystone, and to enter Keystone's remaining Proposed Awards. **See id.**, at 31-52.

_____

11, 2020. The court concluded that venue was improper in Montgomery County and entered an order on July 15, 2020, directing the parties to re-file the petitions in Philadelphia County. Because HanMar promptly filed its petition in Philadelphia County, we deem it timely filed.

On August 3, 2020, Keystone filed a motion for reconsideration of the trial court's order granting HanMar's petition, claiming that the court had improperly granted the petition without affording Keystone 20 days to respond. HanMar filed responses to Keystone's petition and motion. On August 5, 2020, the trial court vacated its July 24, 2020 order and directed Keystone to file a response to HanMar's petition to partially affirm and partially vacate the arbitration award. Keystone timely complied.

On October 23, 2020, the trial court entered two separate orders addressing the parties' respective petitions. Responding to HanMar's petition, the trial court confirmed the awards entered in HanMar's favor, confirmed the award for costs and fees, and denied HanMar's petition in all other respects. Importantly, in distinction from its July 24, 2020 order, the trial court refused HanMar's request to vacate the arbitrator's decision on Disputes #3 and #5. As to Keystone's petition, the trial court denied the petition, concluding that the lease as a whole was neither unconscionable nor a contract of adhesion because Keystone, as a corporation, did not establish that it lacked choice and equal bargaining power.[4] HanMar and Keystone each filed timely appeals from

_____

[4] In its Opinion, the trial court also explained that it did not confirm the arbitration award as to Keystone's Proposed Awards (i) and (ii) because they were untimely filed, and the arbitrator lacked jurisdiction to consider them. *See* Trial Court Opinion, 3/12/21, at 4.

- 8 -

both orders and court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.[5, 6]

Because paragraph 38(A) of the Lease Agreement provides for a final and binding arbitration under the rules of the American Arbitration Association, this is a matter of common law arbitration. **See Dougherty**, 914 A.2d at 876. We employ a limited standard of review in appeals from trial court orders confirming an arbitration award:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to (statutory arbitration) or to a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. The arbitrators are the final judge of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law.

_____

[5] We observe that the October 23, 2020 orders, when read together, ultimately confirm the arbitrator's award with respect to all issues except HanMar's contention that the lease automatically renewed; the orders denied confirmation or modification of the lease renewal rulings. Further, following praecipe by HanMar, judgment was entered on the orders. Accordingly, this appeal is properly before us. **See** 42 Pa.C.S.A. § 7342 (directing that 42 Pa.C.S.A. § 7321.29, except subsection (a)(4), be applied to common law arbitration proceedings); 42 Pa.C.S.A. § 7321.29 (allowing appeals from orders confirming or denying confirmation of an arbitration award and from final judgments entered after an award has been confirmed, vacated without a re-hearing, or modified).

[6] These appeals were entered on four separate Superior Court dockets. Upon motion by HanMar, this Court consolidated the appeals for review.

*Id.* (citations, quotation marks and brackets omitted); *see also Roccograndi v. Martin*, 214 A.3d 251, 256 (Pa. Super. 2019) (stating that "[t]he standard of review in arbitration confirmation cases is whether, in interpreting the award, the trial court exceeded its scope of authority by an abuse of discretion or error of law.").

On appeal, the cross-appellants each raises multiple claims for our review. *See* HanMar's Brief at 4-5; Keystone's Brief at 7-12.[7, 8] For ease of discussion, we will address related claims together. All of the parties' claims can be grouped into one of four categories: (1) HanMar's claim that 42 Pa.C.S.A. § 7342(b) required the trial court to confirm its Proposed Awards; (2) HanMar's contention that the arbitrator acted without authority in failing to conclude that the lease had automatically renewed; (3) Keystone's contention that the entire lease agreement was unconscionable and unenforceable; and (4) Keystone's claim that the arbitrator's award was so ambiguous as to be unenforceable.

_____

[7] Keystone's statement of questions involved includes a subsection (B.), which was not specifically included in its Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. However, the issues in subsection (B.) restate the issues presented in subsection (A.), though they are rephrased to challenge whether the trial court erred in granting HanMar's petition. Thus, while we decline to deem these issues waived, we need not separately address the arguments raised therein.

[8] Unless otherwise indicated, we will cite the parties' arguments from the brief for which they are identified as the appellant in these cross-appeals.

We will first address HanMar's assertion that the arbitrator was required to confirm its Proposed Awards #3 and #5 under 42 Pa.C.S.A. § 7342(b). *See* HanMar's Brief at 37. HanMar argues that because the trial court refused to enter HanMar's Proposed Awards #3 and #5 and denied Keystone's petition to confirm the entry of its own Proposed Awards, there is effectively no confirmed award for Disputes #3 and #5. *See id.*, at 38.

Section 7342(b) provides that, "[o]n application of a party made more than 30 days after an award is made by an arbitrator under section 7341 (relating to common law arbitration), the court shall enter an order confirming the award and shall enter a judgment or decree in conformity with the order." 42 Pa.C.S.A. § 7342(b). "This language has been interpreted as mandatory." *Vogt v. Liberty Mut. Fire Ins. Co.*, 900 A.2d 912, 919 (Pa. Super. 2006).

However, this language has consistently been interpreted as a limitation period. *See Sage v. Greenspan*, 765 A.2d 1139, 1142 (Pa. Super. 2000). As such, it requires that any challenge to a common law arbitration award be filed within thirty days. *See id.* If a challenge is filed after thirty days, it is untimely and deemed waived. *See id.*

Here, HanMar clearly petitioned the trial court to vacate or modify the arbitrator's award, and Keystone followed suit. Since the condition precedent (no challenge to the award within thirty days) was not met, section 7342(b)'s mandate for confirmation does not apply. HanMar's contention that section 7342(b) requires confirmation of its Proposed Awards merits no relief.

Next, we will address HanMar's claim that the arbitrator, and by extension, the trial court, erred in failing to conclude the lease had been automatically renewed. HanMar contends that the arbitrator exceeded his jurisdiction by failing to enter its Proposed Awards #3 and #5. *See* HanMar's Brief at 19. According to HanMar, because Keystone did not timely submit its Proposed Awards, the arbitrator's only option was to enter HanMar's Proposed Awards #3 and #5. *See id.*, at 21; *see also id.*, at 24-25 (arguing that "[t]he Arbitrator could not have been more wrong in his conclusions that he had the authority to disregard the express provisions of the arbitration clause that limited his authority to picking from the eligible Proposed Awards timely submitted.").

HanMar argues that by concluding that the challenged provisions were punitive, the arbitrator made "other findings" in violation of the arbitration provision. *See id.*, at 25-28. Additionally, HanMar asserts that the arbitrator erred in concluding that its Proposed Awards #3 and #5 constituted a penalty. *See id.*, at 31; *see also id.*, at 32-33 (arguing that its Proposed Awards did not seek punitive damages).

By contrast, Keystone argues that the arbitrator properly declined to enter HanMar's Proposed Awards #3 and #5. *See* Keystone's Brief at 58-61. Keystone claims that HanMar failed to establish actual damages to support the imposition of a liability of over $403,000.00. *See id.*, at 60. Keystone also asserts that the trial court erred by reversing the arbitrator's entry of its

Proposed Awards (i) (finding the lease terminated February 28, 2018) and (ii)

(finding Keystone's written notice to terminate the lease was effective to avoid

automatic renewal of the lease). ***See id.***, at 62-65.[9]

Paragraph 38 of the lease agreement sets forth the arbitration process:

38. Miscellaneous.

A. Any and all controversies, claims or disputes of any kind or
nature whatsoever arising out of or relating in any way to this
Lease, including controversies, disputes or claims involving
performance under this Lease or breach thereof, shall be settled
by final and binding arbitration administered by the American
Arbitration Association in Philadelphia, Pennsylvania under its
Commercial Arbitration Rules as modified herein. The
modifications contained herein shall supersede the American
Arbitration Association's commercial arbitration rules and shall be
construed as jurisdictional. Notwithstanding the foregoing, or
anything else contained to the contrary, Lessor [HanMar] retains
the right and may avail itself of any and all rights and remedies
as provided for or pursuant to this Lease in any court of competent
jurisdiction including exercising the warrants of attorney to
confess judgment, money damages, ejectment, or possession.
Further, nothing contained herein shall be construed to limit
Lessor's right to obtain equitable relief whatsoever in a court of
competent jurisdiction.

Judgment upon any award rendered by the American
Arbitration Association may be entered in any court having

---

[9] Keystone does not acknowledge the untimely filing of its counterclaim and Proposed Awards, nor does Keystone support its argument with discussion of pertinent legal authorities beyond citations to our standard of review. ***See*** Pa.R.A.P. 2119(a) (requiring an appellant's argument to include "such discussion and citation of authorities as are deemed pertinent."). Keystone baldly asserts that the arbitrator's failure to enter its Proposed Awards was "ambiguous," and fails to support its claims with citation and discussion of relevant authorities. ***See*** Pa.R.A.P. 2119(a); ***see also Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 781 (Pa. Super. 2015) (stating that "[w]hen an appellant cites no authority supporting an argument, this Court is inclined to believe there is none.").

jurisdiction thereof. **The following standards which shall be construed as jurisdictional**, shall supplement the regulations of the American Arbitration Association and shall control in the event of a conflict:

(i) Lessee shall file its request for arbitration with the Philadelphia office of the American Arbitration Association within thirty (30) days after the controversy, controversies, claim(s) or dispute(s) first arose and the failure of the Lessee to file a timely claim … shall be deemed a waiver of Lessee's rights with respect to such controversy, controversies, claim(s) or dispute(s) and full award shall be granted to Lessor with respect to all claims raised by Lessee. At Lessor's request, the timeliness of the submission shall be addressed and resolved on a preliminary basis and prior to commencement of any proceedings on the merits of such claims.

(ii) Within twenty (20) days of filing the claim, the claimant shall submit its proposed award(s) (the "Proposed Award") to the American Arbitration Association with a copy to respondent. Within twenty (20) days after claimant's submission of its Proposed Award, the respondent shall submit its Proposed Award to the American Arbitration Association. **The respondent's failure to submit its Proposed Award within said twenty (20) days shall be deemed untimely and the arbitrator shall have no jurisdiction to consider it.**

(iii) Each individual item of dispute (an "Individual Dispute") shall be submitted as a separate Proposed Award for decision making purposes. The arbitrator shall rule on each Individual Dispute in the parties' respective proposed awards.

(iv) **The arbitrator shall have jurisdiction to enter only one Proposed Award with respect to each Individual Dispute from the Proposed Awards submitted by one or the other party**, together with all amounts payable under paragraph 38 and **may not make other findings**. **The arbitrator shall have neither authority nor jurisdiction to award punitive damages.** The award of the arbitrator shall be supported by a reasoned opinion including a finding regarding the reasons for the decision, findings of fact, and citations to the relevant provisions of this Lease and/or legal

- 14 -

authority with respect to each item in dispute or with respect to as many items of the dispute as requested by either party.

\* \* \*

(viii) All costs and expenses of arbitration, including the arbitrator's fee, shall be taxed against and paid by the losing party (the "losing party" who shall be defined as the party who has been awarded less than the other party) and shall be added to the award. **Each party shall bear its own attorneys fees, except that if the arbitration is brought as a result of a claim for payments of Minimum Annual Rent and/or Additional Rent from the Lessee and Lessor shall be the winning party**….

Keystone's Response in Opposition, 8/14/20, Exhibit A (Lease Agreement), at

¶ 38 (emphasis added).

Regarding HanMar's Proposed Award #3, the arbitrator acknowledged

that Keystone did not timely vacate the premises, "although only by a day[.]"

Keystone's Response in Opposition, 8/14/20, Exhibit B (Arbitrator's Award),

at 12. The arbitrator stated that Keystone's liability for an extended 5-year

lease term totaled $403,275.00. *See id.* By contrast, HanMar's estimated

their repair costs at $114,000.00 and the cost of the Environmental Study was

estimated at $1,500.00. *See id.* Accordingly, the arbitrator stated that "[b]y

[HanMar] exercising its option to extend the Commercial Lease for five years

they called for payment of approximately 3.5 times the damages they have

allegedly suffered." *Id.* The arbitrator declined to enter the award, concluding

that it constituted a penalty. *See id.*, at 13; *see also id.* (leaving open the

option for HanMar to seek *actual* damages sustained as a result of the breach).

As to Proposed Award #5, the arbitrator relied on its reasoning set forth regarding Proposed Award #3. **See id.**, at 14.

On review, the trial court agreed with the arbitrator's conclusion that HanMar's Proposed Awards #3 and #5 constituted a penalty. **See** Trial Court Opinion, 3/12/21, at 6, 9-10; **see also id.**, at 9 (concluding that HanMar's Proposed Award #3 "requested damages exceeding the compensatory damages needed to restore the Premises and return [HanMar] to its position prior to the breach."). The trial court also concluded that because Keystone's corresponding Proposed Awards were untimely filed, the arbitrator lacked jurisdiction to entertain them. **See id.**, at 16.

We begin by noting that the assumption underlying HanMar's argument raises a novel issue under Pennsylvania law. Because the lease agreement defines certain procedural directives for the arbitration as "jurisdictional," it contends that Pennsylvania courts have the power to vacate the arbitrator's award if the court concludes the arbitrator erred in applying these procedural directives. And HanMar is correct in noting that our jurisprudence has established that challenges to the jurisdiction of an arbitration tribunal must be decided by a court. **See Civan v. Windermere Farms, Inc.**, 180 A.3d 489, 495 (Pa. Super. 2018). However, the jurisdiction at issue in our precedents has always been whether a party consented to arbitration of the dispute at issue. **See id.**

Here, there is no dispute that the parties agreed to arbitrate the dispute about whether the lease automatically renewed; both parties submitted proposed awards on the issue to the arbitrator. Therefore, generally, the question of the proper procedure to be followed during arbitration is "reserved for the arbitrators." *Shamokin Area School Auth. V. Farfield Co.*, 454 A.2d 126, 127 (Pa. Super. 1982). Whether that general rule is overridden by the parties' defining certain procedural requirements as jurisdictional is an open question in Pennsylvania law. *See*, *e.g.*, *U.S. Spaces, Inc. v. Berkshire Hathaway Home Servs. Fox & Roach*, 165 A.3d 931, 934 (Pa. Super. 2017) (observing that "[j]udicial review of a common law arbitration award is severely limited as otherwise arbitration would be an unnecessary stage of litigation, causing only delay and expense without settling the dispute").

However, we need not reach this issue, as even if we accept HanMar's position that the lease agreement has made these procedural directives jurisdictional, we conclude HanMar is due no relief. In HanMar's view, because paragraph 38(A)(iv) requires the arbitrator to choose between the parties' proposed awards, the arbitrator—and subsequently, the reviewing trial court—was compelled to enter HanMar's Proposed Awards #3 and #5. However, paragraph 38(A)(iv), which HanMar contends is jurisdictional, also prohibits the arbitrator from entering an award of punitive damages. *See* Keystone's Response in Opposition, 8/14/20, Exhibit A (Lease Agreement), at ¶ 38(A)(iv). The lease agreement does not define "punitive damages." HanMar asserts that

"punitive damages," as used in the lease agreement, "refers to a punitive damages claim in an *ad damnum* clause, *i.e.*, requested relief of a monetary punitive damage in excess of compensatory damages in order to punish a defendant." HanMar's Brief at 32. However, HanMar points to no place in the record reflecting any agreement between the parties concerning how this term would be construed under the lease. Therefore, construction of the term "punitive damages" was a question of law and fact appropriately tasked to the arbitrator. **See Civan**, 180 A.3d at 493.

The trial court did not conclude that the arbitrator's finding was unconscionable or the result of procedural irregularity. And we can find no error in the trial court's determination. Further, we discern no abuse of discretion or legal error by the trial court in failing to substitute HanMar's Proposed Awards #3 and #5. Accordingly, HanMar's arguments that the trial court erred in failing to find the lease automatically renewed merits no relief.

Next, we turn to Keystone's challenges to the enforceability of the lease and the related challenge to the award of attorneys' fees. Keystone argues that the arbitrator's entry of an award for attorneys' fees, costs, expenses and arbitration costs was "ambiguous" and "in need of clarification." Keystone's Brief at 20. According to Keystone, paragraph 38(A)(viii) (concerning costs, fees and expenses) is procedurally and substantively unconscionable. **See id.**, at 21. Keystone points to the portion of paragraph 38(A)(viii) that allows HanMar to recover its expenses and attorneys' fees if HanMar succeeds on a

claim seeking minimum annual rent or additional rent from Keystone; Keystone highlights the fact that there is no reciprocal provision which would make HanMar responsible for Keystone's expenses and fees. ***See id.***, at 26, 27-28, 37.

Additionally, Keystone argues that the commercial lease is a contract of adhesion, and Keystone lacked the ability to modify any unfavorable contract terms. ***See id.***, at 29. Keystone claims that the parties have unequal bargaining power, because Keystone's president, Mustafa Kol, has only a high school education and is a Turkish immigrant, while Mark Hankin has been a real estate developer since the 1970s. ***See id.***, at 25-26, 30, 31-32.

In response, HanMar contends Keystone did not establish that it lacked equal bargaining power or meaningful choice. ***See*** HanMar's Brief as Appellee at 32. HanMar claims that Kol has been a citizen of the United States since 2006, and Keystone was represented through the transaction by a full service commercial real estate brokerage firm. ***See id.***, at 32-33. HanMar also directs our attention to two addenda to the lease agreement in support of its assertion Keystone was able to negotiate lease terms. ***See id.***, at 35 n.4.

Commercial leases are governed by contract law principles. ***See Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.***, 217 A.3d 1227, 1238 (Pa. 2019). "An adhesion contract is a standard-form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms."

*Am. S. Ins. Co., Inc. v. Halbert*, 203 A.3d 223, 228 (Pa. Super. 2019) (citation omitted); *see also Todd Heller, Inc. v. United Parcel Serv., Inc.*, 754 A.2d 689, 700 (Pa. Super. 2000) (explaining that the hallmark of an adhesion contract is the lack of equal bargaining power between the parties).

Even where a contract is one of adhesion, it is not necessarily unconscionable and unenforceable as a matter of law. *See Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 127 (Pa. 2007).

> [A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it. The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively. The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts. Nevertheless, where material facts are disputed, for example, concerning the general commercial background underlying a challenged transaction and/or the commercial needs of a particular trade, fact finding may be necessary.

*Id.* at 119-20 (footnotes and internal citations omitted).

Here, the arbitrator concluded that the lease agreement constituted a contract of adhesion, and Keystone had no choice but to accept the terms. *See* Keystone's Response in Opposition, 8/14/20, Exhibit B (Arbitrator's Award), at 6.[10] The trial court, in reviewing the arbitrator's award, concluded that Keystone failed to prove that it lacked any meaningful choice regarding

---

[10] We observe, however, that the arbitrator primarily discussed the time for filing arbitration claims and proposed awards in rendering its decision.

the lease terms. **See** Trial Court Opinion, 3/12/21, at 13-14. The trial court therefore refused to confirm those portions of arbitrator's award that found the lease to a contract of adhesion. Our review confirms the trial court's conclusion.

The instant case involves a dispute arising out of a commercial lease agreement, in which Keystone, the lessee, is a corporation. In such settings, we generally presume that parties executing a commercial lease have relatively equal bargaining power. **See Cambria-Stoltz Enters. v. TNT Invs.**, 747 A.2d 947, 950 (Pa. Super. 2000). As the trial court aptly noted, Keystone was represented by a full service commercial real estate brokerage throughout the execution of the lease agreement; Keystone contemplated purchasing the leased premises; Keystone had experience in executing and negotiating commercial leases for other venues; and, through its commercial broker, Keystone had the opportunity to either negotiate the lease terms or consider additional properties. **See** Trial Court Opinion, 3/12/21, at 13-14. While this is undoubtedly a scenario in which one party exerted its substantially superior bargaining power to obtain favorable contract terms, we cannot say the lease agreement was unquestionably a contract of adhesion as a matter of law. As a result, we can discern no abuse of discretion or legal error by the trial court. No relief is due on these claims.

Keystone further argues that the attorneys' fees award is disproportionate and excessive. **See** Keystone's Brief at 38-41. Keystone

claims that the fee certification provided by HanMar is excessive in relation to the nature of the dispute, and instead, is punitive in nature. ***See id.***, at 39. Further, Keystone asserts that HanMar's fee certification should be reduced by any amount incurred through their pursuit of unconscionable claims. ***See id.***, at 41-46.

Keystone fails to provide any legal support for these claims. ***See*** Pa.R.A.P. 2119(a). Accordingly, these claims are waived. ***See Lackner v. Glosser***, 892 A.2d 21, 29 (Pa. Super. 2006) (stating that "arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention.") (citation omitted).[11]

In each of its remaining claims, Keystone challenges the remaining awards entered in favor of HanMar as "ambiguous" and "in need of clarification." ***See*** Keystone's Brief at 47-58. Keystone argues that the arbitrator's awards are "speculative and ambiguous with respect to damages and with respect to the determination of who was the prevailing party for the purpose of awarding attorney's fees…." ***Id.*** at 50. However, Keystone's final

---

[11] Our review reveals that Keystone did not challenge the award of counsel fees as disproportionate and excessive in its court-ordered Pa.R.A.P. 1925(b) concise statement. For this reason, as well, these claims are waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the Statement … are waived."); ***In re Estate of Daubert***, 757 A.2d 962, 963 (Pa. Super. 2000) (explaining that issues not raised in a Rule 1925(b) concise statement are deemed waived).

claims are largely underdeveloped, and provide no legal authority to support these contentions. *See* Pa.R.A.P. 2119(a). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 93 (Pa. Super. 2007). Accordingly, these claims are waived.

Even if not waived, Keystone has failed to establish the trial court erred. Once again, the final arbiter of both law and fact was the arbitrator. Keystone has failed to establish under the appropriate standard of review that judicial intervention with the arbitrator's award is appropriate. No relief would be due even if Keystone had not waived this issue.

Based upon the foregoing, we affirm the trial court orders confirming the five arbitration awards entered in favor of HanMark, confirming the arbitration award of costs and fees in favor of HanMark, denying the remainder of HanMar's petition to partially confirm and partially vacate and modify the arbitration award, and denying Keystone's petition to partially confirm and partially vacate and modify the arbitration award.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/18/2022

- 23 -